IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 4:22CR00051 LPR |
| | ) | |
| DAVID ARNESS RHODEN | ) | |

## THE UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM

David Rhoden's presentence investigation report determined that he is subject to the enhanced penalties provided under Title 18, United States Code, Section 924(e). Rhoden objects to that determination. The Court should overrule Rhoden's objection because Rhoden was properly classified as an armed career criminal.

## FACTS

The Grand Jury for the Eastern District of Arkansas returned an indictment, charging David Arness Rhoden with being a felon in possession of a firearm. The charge stems from March 19, 2021 incident where Rhoden was found with a Glock, model 22, .40 caliber pistol following a brief car chase. Rhoden was charged in this case in February 2022 and pleaded guilty 2 months later, on April 25. *Clerks Minutes*, ECF No. 26, at 1. Rhoden's initial presentence investigation report was completed on June 17, 2022. That PSR determined that Rhoden qualified as an ACCA due to his cocaine and marijuana convictions. Rhoden objected to the designation, arguing that he does not have three prior convictions for serious drug offenses. Rhoden's objection should be overruled. Rhoden has two previous cocaine delivery convictions, one conviction for delivery of marijuana, and one conviction for a terroristic threat. Each of these offenses qualify as an ACCA predicate.

## DISCUSSION

The Armed Career Criminal Act ("ACCA") imposes a mandatory minimum sentence of 15 years' imprisonment for a conviction of a violation of Title 18, United States Code, Section

922(g) if the defendant has three previous convictions for a "violent felony or a serious drug offense, or both, committed on occasions different from one another[.]" 18 U.S.C. § 924(e)(1).

To determine whether a prior conviction qualifies as a "violent felony" or a "serious drug offense," courts generally apply a categorical approach and "look only to the fact of conviction and the statutory definition of the prior offense." *Taylor v. United States*, 495 U.S. 575, 602 (1990). "When a statute criminalizes both qualifying and non-qualifying conduct, courts apply a modified categorical approach and may consider the charging document, plea agreement, plea-colloquy transcript, or 'some comparable judicial record of this information' to determine under which portion of the statute the conviction arose." *Shepard v. United States,* 544 U.S. 13, 26, 125 S.Ct. 1254 (2005). Under either approach, the court must determine whether the defendant's conviction necessarily qualifies as an ACCA predicate. *See United States v. Bynum*, 669 F.3d 880, 885 (8th Cir. 2012).

The Presentence Investigation Report ("PSR") dated January 13, 2023 has determined that Rhoden is subject to an enhancement under the ACCA because he has at least three prior convictions for violent felonies or serious drug offenses committed on occasions different from one another. The PSR reflects that Rhoden has the following prior qualifying convictions:

(1) a delivery of cocaine that occurred on April 27, 2005 was charged in Prairie County, Arkansas Circuit Court Case Number CR-05-16 (PSR ¶ 28);[1]

(2) a delivery of cocaine that occurred on May 3, 2005 was charged in Prairie County, Arkansas Circuit Court Case Number CR-05-15 (PSR ¶ 28);[2]

---

[1] *See Court Records (Case Number CR-05-16)*, attached as Exhibit 1.
[2] *See id*.

(3) a delivery of marijuana that occurred on May 26, 2009 and was charged in Prairie County, Arkansas Circuit Court Case Number CR-09-22 (PSR ¶ 31);[3] and

(4) a terroristic threatening that occurred on July 7, 2012 and was charged in Pulaski County, Arkansas Circuit Court Case Number CR-12-2682 (PSR ¶ 34).[4]

Rhoden does not dispute that he has these convictions or details provided by the PSR. The United States also submits a rough draft of the transcript as Exhibit 4 as further evidence of the nature of Rhoden's terroristic threatening conviction.[5]

The facts that Rhoden admit demonstrate that his prior offenses occurred on separate days; therefore, the offenses can be counted as separate for ACCA purposes. Changes to the federal drug schedules does not make the Arkansas cocaine statute overly broad. Rhoden's terroristic threatening offense involved a threat to a person, so that offense qualifies as a violent felony. Finally, if the Court determines that Rhoden is not subject to the ACCA, the Court should still count Rhoden's drug priors when it calculates his advisory range under Section 2K2.1 of the Guidelines.

## I.    Eighth Circuit Precedent and the Department of Justice Position Regarding the separate-occasions inquiry.

Rhoden's prior convictions occurred on different occasions under the analysis set out in *Wooden v. United States*, 142 S. Ct. 1063 (2022). Recently, the Solicitor General of the United States has determined that, in light of the "multi-factored" inquired by *Wooden*, a jury must find or a defendant must admit, that a defendant's ACCA predicates were committed on occasions different from one another. As set forth above, the United States takes the position that, in this

---

[3] *See Court Records (Case Number CR-09-22)*, attached as Exhibit 2.
[4] *See Court Records (Case Number CR-12-2682)*, attached as Exhibit 3.
[5] The Court reporter has advised that she no longer has the audio from the hearing, so it was not possible to order a formal transcription.

case, the defendant's admissions support the conclusion that the prior offenses were committed on occasions different from one another. As set forth above, the United States takes the position that, in this case, the defendant's admissions support the conclusion that the prior offenses were committed on occasions different from one another.

In reaching that holding, the Court rejected a rule that offenses committed sequentially necessary occur on different occasions. *Id*. at 1068. Instead, the Court held that the different-occasions inquiry "is more multi-factored in nature[.]" *Id*. at 1070.  Although the Court expressly left open the question "whether the Sixth Amendment requires that a jury, rather than a judge, resolve whether prior crimes occurred on a single occasion," *id*. at 1068 n.3, the Solicitor General has taken the position that, considering *Wooden*'s multi-factored and holistic inquiry, a jury must find, or a defendant must a]dmit, that a defendant's ACCA predicates were committed on occasions different from one another. In this case, Rhoden's admissions support the conclusion that his prior offenses were committed on occasions different from one another.

Considering our duty of candor to the Court, the United States notes that the Eighth Circuit Court of Appeals has issued an opinion in *United States v. Stowell*, 40 F.4th 882, 885-86 (8th Cir. 2022), rehearing en banc granted, vacated by 2022 WL 16942355, at *1 (8th Cir. Nov. 15, 2022). In *Stowell*, the PSR said that the felony information indicated that the battery offenses occurred on March 8, 2006, and March 11, 2006. *Id*. at 884. The Court noted that "the offenses occurred three days apart, a significant time lapse[,]" and "the offenses lacked any substantive continuity[,]" and therefore, "were committed on separate occasions and qualify as separate ACCA predicate offenses." *Id*. Acknowledging that in prior cases it had "designated crimes that occurred a few minutes apart and in close physical proximity as being committed on separate occasions[,]" the Eighth Circuit said:

4

In closer cases, the test may be called into question by the Supreme Court's decision in *Wooden v. United States*, 142 S. Ct. 1063, 1069 (2022) (holding that, under the ordinary meaning of 'occasion,' an offender who broke into ten conjoined storage units committed all ten burglaries on the same occasion). But *Wooden* didn't supplant our three-factor test. In fact, the Court specifically noted that time, proximity, and the character of or relationship between offenses may be relevant. *Id*. at 1070-71. And, the offenses here did not occur close enough in time to implicate *Wooden*. *See id*. at 1071 ("In many cases, a single factor—especially of time or place—can decisively differentiate occasions.")."

*Id*. at 884 n.2.

The Eighth Circuit recognized that Stowell's argument that the separate occasions inquiry must be submitted to a jury and found beyond a reasonable doubt was foreclosed by Eighth Circuit precedent. *Id*. at 885 (citing *United States v. Harris*, 794 F.3d 885, 887 (8th Cir. 2015); *United States v. Faulkner*, 826 F.3d 1139, 1148 n.6 (8th Cir. 2016) ("We can examine the circumstances of these prior offenses instead of just the fact of conviction, as we are not restricted under *Taylor v. United States*, [495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990),] or *Shepard v. United States*, [544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005),] as to what we can view to determine whether these are separate offenses."); *United States v. Evans*, 738 F.3d 935, 936 (8th Cir. 2014) (per curiam), *overruled on other grounds by Johnson v. United States*, 576 U.S. 591, 606, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015) ("We have previously held the question of whether prior felonies were committed on separate occasions may be resolved by a judge. Moreover, we have rejected similar Sixth Amendment arguments challenging the information the district court considers when determining the specific dates on which the offenses occurred.") (cleaned up). *See also United States v. Wainwright*, 807 F. App'x 601, 602 (8th Cir. 2020) (per curiam) (collecting cases); *United States v. Wade*, 792 F. App'x 417, 417 (8th Cir. 2020) (per curiam) (citing cases); *United States v. Perry*, 908 F.3d 1126, 1134-36 (8th Cir. 2018) (Stras, J., concurring) (disagreeing

with this Court's precedent but applying it under prior panel rule)*, reh'g and reh'g en banc denied,* (Feb. 20, 2019); *United States v. Wyatt*, 853 F.3d 454, 458-59 (8th Cir. 2017).

Thereafter, the Eighth Circuit upheld application of the ACCA enhancement where the defendant committed one burglary on June 14, 2011, the second on June 29, 2011, and the third on July 5, 2011, even though the defendant was arrested on the same date for the first two burglaries and sentenced concurrently on all three convictions. *United States v. Robinson*, 43 F.4th 892, 894 (8th Cir. 2022). The Eighth Circuit further held that circuit precedent forecloses the argument that application of the enhancement violated the Sixth Amendment because the "committed on occasions different from one another" was "not charged in the indictment and decided by a jury or admitted in a guilty plea, but rather was decided by the district judge at sentencing." *Id.* at 896 (citing cases). *See also United States v. Bragg*, 44 F.4th 1067, 1078-79 (8th Cir. 2022).

On November 15, 2022, the Eighth Circuit granted the petition for en banc rehearing in *Stowell* and vacated the opinion and judgment dated July 25, 2022. *See United States v. Stowell*, No. 21-2234, 2022 WL 16942355, at *1 (8th Cir. Nov. 15, 2022). The Court ordered submission of additional copies of the briefs by November 28, 2022, and advised counsel that the case would be placed on the calendar for oral argument at a later date.

As set forth above, the United States asserts that the defendant's admissions support application of the ACCA enhancement. If the Court disagrees, the United States requests a jury determination as to this issue; however, the United States recognizes the binding Eighth Circuit precedent cited above and ongoing litigation as to this issue.

II.     **Rhoden's prior delivery of cocaine convictions count toward his ACCA status.**

Rhoden's prior cocaine deliver convictions qualify as ACCA predicates for multiple reasons. A discussion of the appropriate analytical framework is set out below. Rhoden's prior convictions meet the requirements of that framework.

A.  **Determining Whether a State Conviction Qualifies as a Serious Drug Offense Under the ACCA**

A person is subject to enhanced penalties under the ACCA if the person has three or more prior convictions for offenses that are "violent felon[ies]" or "serious drug offense[s]." 18 U.S.C. § 924(e)(1). The term "serious drug offense" includes "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." *Id*.

In determining whether a state conviction qualifies as a serious drug offense, the Court considers whether the elements of the crime of conviction sufficiently match the conduct of a serious drug offense. *United States v. Vanoy*, 957 F.3d 865, 867 (8th Cir. 2020) (citing *Shular v. United States*, 140 S. Ct. 779, 782 (2020)). "If the state offense sweeps more broadly, or punishes more conduct than the federal definition, the conviction does not qualify as a predicate offense." *Id*. (citing *Descamps v. United States*, 570 U.S. 254, 261 (2013)). However, if a statute permits conviction on alternative bases, some of which qualify, while others do not, courts first consider whether the alternatives are elements or means. *Mathis v. United States*, 136 S. Ct. 2243, 2256-57 (2016).

If the alternatives are different means of committing the same element, the statute is not divisible and cannot serve as a predicate for an ACCA enhancement. *Id*. However, if the alternatives are different elements, the statute is divisible "in that it encompasses multiple crimes,

some of which are [predicate offenses] and some of which are not," and courts should apply a "modified categorical approach to 'look at the charging document, plea colloquy, and comparable judicial records' for determining which part of the statute the defendant violated." *United States v. Rice*, 813 F.3d 704, 705 (8th Cir. 2016) (quoting *Dawn*, 685 F.3d at 795)). The approved documents to which the Court may look to determine the elements of the offense include jury instructions. *Vanoy*, 957 F.3d at 867 (citing *Descamps*, 570 U.S. at 263).

"'Elements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'" *Mathis*, 136 S.Ct. at 2248 (quoting Black's Law Dictionary 634 (10th ed. 2014)). "At a trial, they are what the jury must find beyond a reasonable doubt to convict the defendant," "and at a plea hearing, they are what the defendant necessarily admits when he pleads guilty." *Id*. "Facts, by contrast, are mere real-world things—extraneous to the crime's legal requirements[,]" sometimes referred to as "brute facts" when courts distinguish them from elements, which do not have to be found by a jury or admitted by a defendant. *Id*.

The Court "may use a state's model jury instructions to 'reinforce' [its] interpretation of the means or elements inquiry." *United States v. Harris*, 950 F.3d 1015, 1019 (8th Cir. 2020) (quoting *United States v. McMillan*, 863 F.3d 1053, 1057 (8th Cir. 2017)). Additionally, the Court may look elsewhere if this Court finds that the state court decisions do not "definitively" answer the question. *Mathis*, 136 S. Ct. at 2256 ("if state law fails to provide clear answers, federal judges have another place to look: the record of a prior conviction itself"). The Court may "peek at the record documents" for "the sole and limited purpose of determining whether the listed items are elements of the offense." *Id*.

> *Descamps* previously recognized just this way of discerning whether a statutory list contains means or elements. *See* [133 S.Ct. 2276, 2285, n. 2 (2013)]. The Court there noted that indictments, jury instructions, plea colloquies and plea agreements will often "reflect the crime's elements" and so can reveal—in some cases better

> than state law itself—whether a statutory list is of elements or means. *Ibid*.
> Accordingly, when state law does not resolve the means-or-elements question,
> courts should "resort[] to the [record] documents" for help in making that
> determination. *Ibid*.

*Id*. at 2257 n.7. Where the indictment or information references "one alternative term to the exclusion of all others," that indicates "the statute contains a list of elements, each one of which goes toward a separate crime." *Id*. at 2257. If the specific crime identified through the *Shepard* documents does not reach more conduct than the federal definition, then it qualifies as a serious drug offense under ACCA.

A state statute is only overbroad if there is a realistic probability that it would be applied differently than federal law. In *United States v. Bragg*, 44 F.4th 1067 (8th Cir. 2022), the Eighth Circuit stated:

> [A] showing of overbreadth:
>
> requires more than the application of legal imagination to a state statute's language.
> It requires a realistic probability, not a theoretical possibility, that the State would
> apply its statute to conduct that falls outside the generic definition of a crime. To
> show that realistic probability, an offender, of course, may show that the statute
> was so applied in his own case. But he must at least point to his own case or other
> cases in which the state courts in fact did apply the statute in the special
> (nongeneric) manner for which he argues.

*Id*. at 1076 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007); *see also United States v. Swopes*, 886 F.3d 668, 671 (8th Cir. 2018), as corrected (Mar. 29, 2018).

In *Vanoy*, 957 F.3d at 867, the Eighth Circuit determined that a Virginia law was divisible by the type of drug and applied the modified categorical approach to determine that a defendant's prior Virginia drug conviction could be used to enhance his sentence under ACCA. Similarly, in *Martinez v. Sessions*, 893 F.3d 1067 (8th Cir. 2018), the Eighth Circuit approved a decision of the Board of Immigration Appeals to remove an alien from the United States for a prior drug conviction under Missouri state law finding that the modified categorical approach applied because

under Missouri law the specific type of controlled substance was an element of the crime. *Id.* at 1070-71.

Also, in *Rendon v. Barr*, 952 F.3d 963 (8th Cir. 2020), another immigration case, the Eighth Circuit approved the application of the modified categorical approach to a Minnesota drug statute finding that under the Minnesota drug statute, discrete controlled substances constituted elements of the offense, not means. *Id.* at 967-69. In support of this conclusion, the Eighth Circuit pointed to a Minnesota Court of Appeals case where a defendant was convicted of seven different counts for possessing seven different controlled substances at the same time. *Id.* at 969. The Eighth Circuit stated, "We have considered separate convictions for different types of controlled substances persuasive evidence that the identity of a substance is an element of the crime." *Id. See also United States v. Martinez–Lopez,* 864 F.3d 1034, 1040 (9th Cir. 2017) (en banc) (California statute was divisible with respect to its controlled-substance requirement.); *Sorensen v. United States*, 2020 WL 11191679, *23 (D.S.D. Sept. 22, 2020) (Discrete controlled substances are elements, not means under established South Dakota law.).

### B.  The Arkansas delivery of cocaine statute under which Rhoden was convicted was divisible by type of controlled substance.

Prior to 2011, drug offenses were charged under Ark. Code Ann. § 5-64-401, which included the offenses of delivery or possession with the intent to deliver controlled substances. The penalties changed depending upon the quantities of the substances and the Schedule of the controlled substance. Ark. Code Ann. § 5-64-401(a)(1) (effective 2002 to 2006). Under this statute, the particular controlled substance that was delivered or possessed with the intent to deliver is an element of the offense. Here, the charging document specified the controlled substance at issue, namely cocaine.

The Arkansas Model Jury Instructions for Ark. Code Ann. § 5-64-401 support the conclusion that the type of controlled substance is an element, as the model indicates that the name of the substance is to be inserted throughout the instruction and verdict form. *See* 1 Arkansas Model Jury Instructions – Criminal AMCI 2d 6407 and 6408-VF (possession with the intent to deliver instruction and verdict form); 1 Arkansas Model Jury Instructions – Criminal AMCI 2d 6406 and 6408-VF (delivery instruction and verdict form).

The defendant's drug convictions were for violating Arkansas Code Annotated Section 5-64-401. In an unpublished per curiam opinion, the Arkansas Supreme Court rejected a defendant's argument that his convictions for possession of methamphetamine with the intent to deliver and possession of marijuana, third offense, violated the prohibition against double jeopardy. *Prichard v. State*, No. CR 89-8, 1990 WL 68646, at *1 (Ark. May 21, 1990). The Court said, "this argument ignores the fact that both crimes had different elements because both involved different controlled substances; therefore, the claim is meritless." *Id*. Thus, the Arkansas Supreme Court recognized that the type of controlled substance is an element of the separate offenses under Section 5-64-401. *Id*. In *Stout v. State*, 320 Ark. 552, 560, 898 S.W.2d 457, 462 (1995), the Arkansas Supreme Court stated, "an element of the crime with which appellant was charged was that he possessed ten pounds or more of marijuana." (citing Ark. Code Ann. § 5–64–401 (Repl. 1993)).

Additionally, in *Carter v. State*, 2010 Ark. 293, 1, 367 S.W.3d 544, 546 (2010), the defendant was convicted of possession of cocaine with the intent to deliver, possession of marijuana with the intent to deliver, possession of drug paraphernalia, simultaneous possession of drugs and a firearm, and maintaining a drug premises, all arising from the execution of a search warrant at a single address on July 31, 2008. The conclusion that the statute is divisible, and the modified categorical approach applies, is supported by the fact that a defendant can be convicted

under Arkansas law of separate offenses of possession of cocaine with the intent to deliver and
also possession of marijuana with the intent to deliver for possession of such substances on a single
occasion.

Because the statute is divisible as to the controlled substance, and the *Shepard* documents
establish that the defendant was convicted of delivery of cocaine specifically, the statute is not
overbroad.

### C. There is Eighth Circuit precedent supporting the conclusion that Rhoden's Arkansas convictions for delivery of cocaine qualify for ACCA purposes.

Whether the defendant's prior cocaine felonies qualify as ACCA predicates is controlled
by a 2019 Eighth Circuit decision. *See United States v. Meux*, 918 F.3d 589 (8th Cir. 2019)
(affirming a defendant's ACCA status concluding that his prior convictions, which included
convictions involving cocaine under Arkansas Code Annotated § 5-64-401, qualified as serious
drug offenses under the ACCA). The defendant in *Meux* had multiple prior convictions for
violations of Arkansas Code Annotated § 5-64-401. *Id*. at 590.[6] The fighting issue in *Meux* was a
challenge to the defendant's ACCA status because the defendant contended that under the
modified categorical approach, convictions under the Arkansas drug statute did not qualify as
serious drug offenses. *Id*.; *Meux Appellant's Brief*, 2018 WL 1951514, at *6 (summarizing Meux's
challenge to his ACCA status). The Eighth Circuit said the district court was right to overrule
Meux's objection. *Meux*, 918 F.3d at 591. The Court determined that, even though the statute was
broader than the federal statute, the relevant subsection was divisible and that the crimes for which

---

[6] The Eighth Circuit opinion did not specify the controlled substance at issue, but the
records of Meux's prior convictions, which were filed on the district court docket, clearly set out
that cocaine was the substance at issue in two of Meux's prior convictions. *Felony Information*,
EDAR Case No. 4:16CR00136, ECF No. 30-1 at 1 and *Felony Information*, EDAR Arkansas Case
No. 4:16CR00136, ECF No. 30-6, at 1. Those documents were part of the appellate record in *Meux*.
Fed. R. App. P. 10(a) (describing what documents comprise the record on appeal).

Meux was convicted (which included convictions under Arkansas law for possession of cocaine with the intent to deliver and delivery of cocaine) qualified for ACCA purposes. *Id*.; *Meux Appellant's Brief*, 2018 WL 1951514, *3 (detailing Meux's prior offenses).

Therefore, the Eighth Circuit's analysis in *Meux* should control the outcome of this case. *See, e.g., United States v. Hamilton*, 835 Fed. Appx. 170, 171 (8th Cir. 2021) (refusing to consider new arguments about whether an offense qualified as an ACCA predicate when there was an earlier case that determined the offense counted). In *Hamilton*, the issue was whether the defendant's prior offense counted as a violent felony because typically it was a misdemeanor. *Id*. at 171-72. The prior Eighth Circuit case, *United States v. Perry*, analyzed the same statute as the *Hamilton* court, but the misdemeanor-or-felony issue was not the fighting concern in *Perry*. *United States v. Perry*, 908 F.3d 1126, 1133 (8th Cir. 2018). The defendant challenged the counting of his prior conviction because he believed the offense was counted twice. *Id*. Nonetheless, when the *Hamilton* court was confronted with a subsequent challenge to the same offense as an ACCA predicate on slightly different grounds, the *Hamilton* court held that *Perry*'s determination that the offense counted as a predicate precluded further challenges on other grounds. *See Hamilton*, 835 Fed. Appx. at 171-72 (explaining that the determination that the "Minnesota recidivist domestic assault qualifies as a violent felony under the ACCA constitutes a holding that is binding on future panels[.]").

This case presents a circumstance analogous to *Hamilton*. In this circumstance, the determination that Meux's prior Arkansas cocaine felonies counted for ACCA purposes was the holding in *Meux*; that determination was essential to the judgment. *Meux*, 918 F.3d at 591. Absent a determination that the Arkansas cocaine statute counts as an ACCA predicate, Meux would not have been subject to the ACCA. *Id*. Accordingly, much like the Eighth Circuit panel in *Hamilton*

was bound a prior Eighth Circuit holding in *Perry*, this Court is bound by the holding in *Meux* that Arkansas cocaine qualifies as an ACCA predicate offense.

The circumstances of this case are more complex than that faced by the *Hamilton* Court because a subsequent Eighth Circuit panel analyzed the Iowa drug statute and determined that it does not qualify as an ACCA predicate because the Iowa statute has not explicitly excluded Ioflupane[7] from the cocaine statute. *See United States v. Perez*, 46 F.4th 691, 701 (8th Cir. 2022). In *Perez*, the defendant contended that the Iowa cocaine statute did not apply as a predicate offense because the Iowa schedule of controlled substances in effect at the time the defendant was convicted of the state offense did not match the federal schedule of controlled substances at the time the defendant committed the federal offense. *Id*. at 699. The Eighth Circuit agreed. *Id*. at 701. Ultimately, the Eighth Circuit held that the Iowa cocaine statute was overbroad and indivisible; therefore, the offense did not count for ACCA purposes. *Id*.

The Arkansas drug statute does not specifically exclude [$^{123}$I]ioflupane; however, *Perez* does not apply to the facts of this case. Rather, *Meux* controls. Any reading of *Perez* that would require *Meux* to come out differently would be inconsistent with long-standing Eighth Circuit stare decisis rules. *See United States v. Anwar*, 880 F.3d 958, 971 (8th Cir. 2018) ("Our long-standing rule is that one panel may not overrule an earlier decision by another."); *but see United States v. Villareal-Amarillas*, 562 F.3d 892, 898 n.4 (8th Cir. 2009) (a panel "may reconsider a prior panel's decision if a supervening Supreme Court decision "undermines or casts doubt on the earlier panel decision.") (quoting *K.C.1986 Ltd. Partnership v. Reade Mfg.*, 472 F.3d 1009, 102 (8th Cir. 2007)).

---

[7] The Eighth Circuit refers to "Ioflupane;" however, [$^{123}$I]ioflupane was the substance excluded from the federal schedule. *See* 21 C.F.R. § 1308.12 Schedule II(b)(4).

An appropriate respect to precedent by this Court requires a reading of *Meux* and *Perez* that gives effect to both opinions. *See Helton v. AT&T*, 709 F.3d 343, 354 (4th Cir. 2013) (explaining that when the Court of Appeals interprets its precedent, the Court should look for interpretations to reconcile its decisions rather than placing them in conflict). Here, a harmonious reading is that *Perez* governs whether the Iowa cocaine statute counts as an ACCA predicate and *Meux* governs whether the Arkansas cocaine statute counts. To the extent there exists inconsistency in the two opinions, it is the role of the Eighth Circuit, sitting en banc, to resolve circuit precedent. *Anwar*, 880 F.3d at 971 ("Only the en banc court has the authority to overrule a prior panel opinion, whether in the same case or in a different case") (cleaned up). Unless the en banc panel of the Eighth Circuit or the Supreme Court say otherwise, this Court should treat *Meux* as binding when assessing whether such Arkansas cocaine convictions qualify as ACCA predicates. *United States v. Johnson*, 338 F.3d 918, 922-23 (8th Cir. 2003) ("Neither a district court nor a subsequent panel of [the Eighth Circuit] is free to disregard a previous opinion of [the Eighth Circuit] on the theory that that earlier opinion was an incorrect interpretation of Supreme Court authority existing at the time.").

### D. Even post-*Perez*, Arkansas convictions for delivery of cocaine qualify as serious drug offenses under the ACCA.

In *Perez*, the Eighth Circuit established a new framework for determining when a state offense qualifies as a prior serious drug offense. 46 F.4th at 700.[8] Specifically, the Court said that

---

[8] The United States acknowledges, as it must, that *Perez* is binding until the Eighth Circuit or the Supreme Court says otherwise. *United States v. Hinton*, 236 Fed. Appx. 237, 238 (8th Cir. 2007). Even still, the United States also takes the position that *Perez* was wrongly decided because it conflicts with Supreme Court precedent, namely *McNeil v. United States*, 563 U.S. 816 (2011). In *McNeil*, "the Supreme Court held that, when evaluating whether a prior state offense is a 'serious drug offense' because it carries a maximum sentence of ten or more years for the purpose of 18 U.S.C. § 924(e)(2)(A)(ii), we must look to the state's law at the time of the defendant's prior conviction." *United States v. Jackson*, No. 21-13963, 2022 WL 4959314 (11th Cir. Sept. 8, 2022)

it was appropriate to compare the elements of the state offense at the time of the prior conviction to the federal drug statute at the time the defendant committed the felon-in-possession offense. *Id*. Ultimately, the Eighth Circuit in *Perez* held that because the Iowa state statute of conviction included Ioflupane, but the Controlled Substances Act excludes Ioflupane[9] as a controlled substance, the Iowa statute was overbroad, and Perez's prior cocaine delivery convictions did not qualify as serious drug offenses under the ACCA. *Id*. at 701; *see also United States v. Myers*, 56 F.4th 595, 599 (8th Cir. 2022) (holding that conviction for sale of cocaine under Missouri law does not qualify as serious drug offense).

Even after *Perez*, prior Arkansas convictions for delivery of cocaine qualify as ACCA predicates. Federal law includes within Schedule II the following:

> (4) coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed; cocaine, its salts, optical and geometric isomers, and salts of isomers; ecgonine, its derivatives, their salts, isomers, and salts of isomers; or any compound, mixture, or preparation which contains any quantity of any of the substances referred to in this paragraph.

21 U.S.C. § 812(c) Schedule II(a)(4). In the federal regulations, Schedule II includes:

> (4) Coca leaves (9040) and any salt, compound, derivative or preparation of coca leaves (including cocaine (9041) and ecgonine (9180) and their salts, isomers, derivatives and salts of isomers and derivatives), and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include:
>
>> (i)     Decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine; or
>>
>> (ii)    [$^{123}$I]Ioflupane.

21 C.F.R. § 1308.12(b)(4).

---

(vacating panel opinion in *United States v. Jackson*, 36 F.4th 1294 (11th Cir. 2022, and ordering supplemental briefing).

[9] The Eighth Circuit refers to "Ioflupane;" however, [$^{123}$I]ioflupane was the substance excluded from the federal schedule. *See* 21 C.F.R. § 1308.12 Schedule II(b)(4).

Arkansas Administrative Code 007.07.2 contains a listing of controlled substances. Schedule II, subsection (b)(4), includes:

> (4) Coca leaves (9040) and any salt, compound, derivative, or preparation of coca leaves, (including cocaine (9041) and ecgonine (9180) and their salts, isomers, derivatives and salts of isomers and derivatives), and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine.

007-07 Ark. Code R. § 002.

As set forth above, the statute under which Rhoden was convicted is divisible as to the controlled substance. Rhoden was convicted of a cocaine offense.

Furthermore, *Perez* is distinguishable because the Arkansas law in effect at the time of conviction did not consider [123I]ioflupane as a controlled substance, which is consistent with the current federal drug schedules. When the defendant was convicted of the cocaine offense at issue, Arkansas law deemed cocaine a Schedule II controlled substance. Ark. Code Ann. § 5-64-205 and 206. To be a Schedule II controlled substance under Arkansas law, the substance must have a high potential for abuse. Ark. Code Ann. § 5-64-205; *see also Curry v. State*, 279 Ark. 153, 158-59, 649 S.W.2d 833, 836 (1983) (interpreting the scheduling statute as requiring a potential for abuse). [123I]ioflupane does not carry any risk for abuse; therefore, it is not a controlled substance under Arkansas law.

In assessing whether [123I]ioflupane is at risk for abuse, it is important to explain what [123I]ioflupane is. The substance is a "radioactive isotope of ioflupane in a pharmaceutical product, known as 'DaTscan,' used to evaluate and diagnosis patients with Parkinson's disease." *United States v. Taylor*, No. 20-cr-20449, 2022 WL 3447596, *3 (E.D. Mich. Aug. 17, 2022); *DEA [123I]ioflupane Report*, attached as Exhibit 5, at 2. The Drug Enforcement Administration ("DEA")

considered [$^{123}$I]ioflupane to be a Schedule II controlled substance because it is derived from cocaine via ecgonine, and federal law includes cocaine and ecgonine and their derivatives in Schedule II. *Id.*; 21 C.F.R. § 1308.12(b)(4). In September 2015, DEA excepted [$^{123}$I]ioflupane from the federal Schedule II. *See Taylor*, 2022 WL 3447596, *3-5 (citing 21 C.F.R. § 1308.12 Schedule II(b)(4)(ii)).[10] The DEA made clear that moving forward, [$^{123}$I]ioflupane was not a controlled substance because it was not subject to abuse. *See DEA [$^{123}$I]ioflupane Report*, Exh. 5, at 3; *see also* 80 FR 54715-01; 80 FR 31521-01.

The same factors that led the DEA to remove [$^{123}$I]ioflupane from the federal controlled substances schedule support a reading of Arkansas's controlled substances regulations that excludes [$^{123}$I]ioflupane from Arkansas's Schedule II. Specifically, [$^{123}$I]ioflupane is impossible to abuse or traffic given the tools needed to create the substance and the nature of the substance itself. [$^{123}$I]ioflupane is produced only in small amounts "by a highly technical and complex synthetic route which requires specialized equipment." *Id.* at 6. Second, once created, the substance only remains in existence for 24 hours because the substance is radioactive. *Id.* at 4, Third, it "will not be stored as inventory . . . . [which] substantially limit[s] the possibility of diversion and abuse." *Id.* at 5. Fourth, "[a]ccording to HHS, an abuser would need to inject nearly 6,000 vials or 15 liters of [$^{123}$I]ioflupane-containing DaTscan$^{TM}$ to achieve a subjective high. *Id.* at 2. That "volume [is] likely to cause death if administered intravenously." *Id.* Fifth, HHS reports that "extraction of [$^{123}$I]ioflupane from DaTscan$^{TM}$ would be impossible due to its limited production and availability[.]" *Id.* at 2. Further, the process would be "technically complex" and "require advanced equipment not available to the general public." *Id.*

---

[10] Again, the Eighth Circuit said that Ioflupane was completely removed from the federal schedule. *See Perez*, 46 F.4th at 701. That is not accurate; only the radioactive version of the substance, [$^{123}$I]ioflupane, has been removed. *See* 21 C.F.R. § 1308.12 Schedule II(b)(4).

All of these factors make radioactive [$^{123}$I]ioflupane untenable as a recreational drug. In the DEA's words, it is "a radiolabeled formulation with a limited storage life that is not desired by drug users." *Id*. at 9. Indeed, as of 2015, the U.S. Department of Health and Human Services ("HHS") was aware of "no reports of abuse of [$^{123}$I]ioflupane." *Id*. at 9. The DEA ultimately concluded that [$^{123}$I]ioflupane is "not abusable." *Id*. at 11.

Arkansas's controlled substances Schedule II includes cocaine and its derivatives; nevertheless, the United States contends that the appropriate interpretation of Arkansas law, considering all of the facts discussed by DEA, is that [$^{123}$I]ioflupane is not and has never been a controlled substance under Arkansas law because it does not have any potential for abuse. Arkansas law does not criminalize [$^{123}$I]ioflupane, the Arkansas statute is 1not overly broad, and the conviction at issue qualifies as an ACCA predicate. *Meux*, 918 F.3d at 591.

### E. Arkansas drug trafficking convictions involving cocaine qualify as ACCA predicates because there is no realistic possibility that the State of Arkansas would apply its drug statute against a delivery of [$^{123}$I]ioflupane.

Even if this Court determines that the Arkansas cocaine statute does not exclude [$^{123}$I]ioflupane, convictions for delivery of cocaine still count as ACCA predicate offenses. The United States Supreme Court has held that the categorical approach analysis "is not an invitation to apply 'legal imagination' to the state offense." *Moncrieffe v. Holder*, 569 U.S. 184, 191, 133 S.Ct. 1678, 185 L.Ed.2d 727 (2013) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007)). Instead, "there must be a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside" the federal offense. *Id.* (internal quotation marks omitted). The Eighth Circuit has held, as recently as August 2022, that the realistic probability test set out in *Duenas-Alvarez* remains good law. *United States v. Bragg*, 44 F.4th 1067, 1076 (8th Cir. 2022) (rejecting a defendant's contention that *United States*

*v. Taylor*, 142 S.Ct. 2015 (2022), eliminated the realistic probability test). The Eighth Circuit's interpretation of the status of Supreme Court precedent controls. *Johnson*, 338 F.3d at 922-23.

Here, there is no realistic probability that any conviction under the Arkansas Controlled Substances Act has ever or will ever involve [123I]ioflupane. As noted above, the features of this radioactive, difficult-to-create-and-maintain substance make it impossible to abuse or traffic for the reasons set forth above. Accordingly, even if this Court believes there was some minuscule, theoretical possibility of abuse, the possibility is so remote and unrealistic that *Duenas-Alvarez* demands that it not be considered when evaluating the breadth of the statute. *Gonzalez v. Wilkinson*, 990 F.3d 654, 659 (8th Cir. 2021). The Court in *Perez* did not engage in the *Duenas-Alvarez* analysis, nor did the parties brief the issues regarding the reasons why [123I]ioflupane is impossible to abuse or traffic. When considered under the modified categorial approach, with the appropriate considerations under *Duenas-Alvarez*, the Arkansas cocaine statute is not broader than federal law, and is, therefore, an ACCA predicate offense.

[123I]ioflupane trafficking does not exist, and it is not possible. Any purported "overbreadth" based on [123I]ioflupane would be entirely illusory.

Notably, accepting the defendant's position in this case would mean that no Arkansas cocaine delivery convictions qualify for recidivism enhancements under the ACCA, contradicting the Supreme Court's repeated warnings against interpretations of such enhancements that read them out of existence. *See Quarles v. United States*, 139 S. Ct. 1872, 1879 (2019); *Stokeling v. United States*, 139 S. Ct. 544, 552 (2019). Congress did not intend to exclude such serious offenses from inclusion under the ACCA, and there is no indication of such intent.

### F. The defendant's Arkansas cocaine conviction qualifies as a serious drug offense post-*Owen*.

The defendant may attempt to rely on *United States v. Owen,* 51 F.4th 292 (8th Cir. 2022), in support of an argument that his Arkansas drug convictions do not qualify as "serious drug offenses" for purposes of the ACCA. In *Owen*, the Eighth Circuit held that the defendant's conviction under Minnesota law for third degree drug sale of cocaine did not qualify as a serious drug offense under ACCA because Minnesota's definition of cocaine was broader than the definition of cocaine under federal law. The Eighth Circuit stated:

> Minnesota's all-inclusive definition covers "coca leaves and any salt, compound, derivative, or preparation of coca leaves, including cocaine and egconine, the salts and isomers of cocaine and egconine, and the salts of their isomers and any salt, compound, derivative, or preparation thereof that is chemically equivalent or identical with any of those substances." Minn. Stat. § 152.01, subd. 3a (emphasis added).... Cocaine has multiple isomers. See 1 Gerald F. Uelmen & Alex Kreit, Drug Abuse and the Law Sourcebook § 5:23 (2022). The problem for the government is that federal law criminalizes just two: optical and geometric isomers. 21 U.S.C. §§ 802(14), 812, sched. II(a)(4); 21 C.F.R. § 1308.02. Minnesota's statute, by contrast, bans them all. We have already concluded that a drug statute that criminalizes even one additional isomer does not qualify as a "serious drug felony." *United States v. Oliver*, 987 F.3d 794, 806–07 (8th Cir. 2021) (holding that an Illinois drug statute was overbroad because it covered "optical, positional, and geometric isomers" of cocaine (emphasis added)). It should come as no surprise that a statute that reaches even more is overbroad too.

*Id.* at 295-96.

To the extent the defendant argues that the Arkansas statute under which he was convicted is similarly overbroad, the defendant's argument is without merit because the Arkansas law is not broader than federal law as to cocaine. Federal law includes within Schedule II the following:

> (4) coca leaves, except coca leaves and extracts of coca leaves from which cocaine, egconine, and derivatives of egconine or their salts have been removed; cocaine, its salts, optical and geometric isomers, and salts of isomers; egconine, its derivatives, their salts, isomers, and salts of isomers; or any compound, mixture, or preparation which contains any quantity of any of the substances referred to in this paragraph.

21 U.S.C. § 812(c) Schedule II(a)(4). In the federal regulations, Schedule II includes:

(4) Coca leaves (9040) and any salt, compound, derivative or preparation of coca leaves (including cocaine (9041) and ecgonine (9180) and their salts, isomers, derivatives and salts of isomers and derivatives), and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include:

> (i)     Decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine; or

> (ii)    [$^{123}$I]Ioflupane.

21 C.F.R. § 1308.12(b)(4). Under federal law, as it relates to cocaine, the term "isomer" means "any optical or geometric isomer." 21 U.S.C. § 802(14) ("The term 'isomer' means the optical isomer, except as used in schedule I(c) and schedule II(a)(4). As used in schedule I(c), the term 'isomer' means any optical, positional, or geometric isomer. As used in schedule II(a)(4), the term 'isomer' means any optical or geometric isomer.").

Arkansas Administrative Code 007.07.2 contains a listing of controlled substances. Schedule II, subsection (b)(4), includes:

(4) Coca leaves (9040) and any salt, compound, derivative, or preparation of coca leaves, (including cocaine (9041) and ecgonine (9180) and their salts, isomers, derivatives and salts of isomers and derivatives), and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine.

007-07 Ark. Code R. § 002. In defining "narcotic drug," Arkansas law limits the isomers of cocaine to "optical and geometric isomers" as well. Ark. Code Ann. § 5-64-101(17)(B)(iv) ("Cocaine, its salts, optical and geometric isomers, and salts of isomers"). Also, under Arkansas Administrative Code 007.07.2(b)(4), the term "isomers" modifies the term "cocaine," not the chemical structure of cocaine. The only isomers that *are cocaine* are its optical and geometric isomers. As discussed below, the structure isomers have unique names because they are different substances. In light of this, the term "isomer" as it relates to cocaine only includes optical and geometric isomers of

cocaine. Thus, both federal and Arkansas law limit the isomers of cocaine to optical and geometric isomers, and the Arkansas statute is not overbroad.

To the extent the Court determines it is necessary to go beyond this analysis, a brief discussion of isomers is necessary. Isomers can generally be described as "molecules that share the same chemical formula but have their atoms connected differently, or arranged differently in space." *United States v. Phifer*, 909 F.3d 372, 376 (11th Cir. 2018) (cleaned up). "The way that the atoms are arranged or connected determines the type of isomers the molecules form." *Id.* at 376-77. "Two fundamental types of isomers exist: stereoisomers and constitutional isomers, which are also known as structural isomers." *Id.* at 377. "Each isomer type, in turn, has sub-types. Optical and geometric isomers, which are mentioned in the DEA's definition of 'isomer,' are sub-types of stereoisomers. Positional isomers—also noted in the DEA's definition of 'isomer'—are a sub-type of constitutional isomers." *Id.* The chart below provides a useful visual depiction of various types of isomerism:



"Unlike in stereoisomers, the atoms in constitutional isomers differ in how they are connected." *Id.* at 378. "So although constitutional isomers share the same constituent atoms in

the same numbers, those atoms are bonded together in different orders." *Id*. Thus, constitutional isomers have unique names.

For example, a constitutional (structural) isomer of cocaine, such scopolamine, will have a name other than cocaine. If scopolamine was submitted to the Arkansas State Crime Laboratory, the report would reflect scopolamine, <u>not</u> cocaine. The report would only reflect cocaine, cocaine hydrochloride, or cocaine base if cocaine, a salt of cocaine, an optical or geometric isomer of cocaine, or a salt of an optical or geometric isomer of cocaine has been identified. *See Affidavit from Arkansas State Crime Laboratory*, attached as Exhibit 6.

Therefore, there is no realistic probability that the definition of cocaine under Arkansas law would be applied more broadly than the federal definition of cocaine. To conclude otherwise leads to absurd results. The conviction qualifies as a "serious drug offense," and the defendant's argument that he does not qualify as an Armed Career Criminal is without merit.[11]

## III.   Rhoden's marijuana conviction counts as a serious drug offense.

Given *Perez*, the United States also addresses the question of whether marijuana counts as an ACCA predicate. Title 21, United States Code, Section 802(16)(A) defines "marihuana" as "all parts of the plan Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin." The federal definition of "marihuana" specifically excludes: (i) hemp, as defined in section 1690*o* of Title 7; or (ii) the mature stalks of such plant, the fiber produced from such stalks, oil or cake made from the seeds of such plant, or any other

---

[11] The United States litigated these issues in *United States v. Byron Lee*, Case No. 4:21CR306 BSM. On February 16, 2023, Judge Miller issued an order finding that when the stringent approach of the Eighth Circuit is applied, Arkansas's definition of concaine are broader than the federal definitions. *Id*. (Doc. No. 77). The United States is continuing to evaluate its option to seek further review of that decision.

compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant. 21 U.S.C. § 802(16)(B).

In 2009, at the time of Rhoden's marijuana conviction, Arkansas law defined marijuana as follows:

(15)(A) "Marijuana" means:

(i) Any part and any variety or species, or both, of the Cannabis plant that contains THC (Tetrahydrocannabinol) whether growing or not;;

(ii) The seeds of the plant;

(iii) The resin extracted from any part of the plant; and

(iv) Every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds, or resin.

(B) "Marijuana" does not include:

(i) The mature stalks of the plant;

(ii) Fiber produced from the stalks;

(iii) Oil or cake made from the seeds of the plant;

(iv) Any other compound, manufacture, salt, derivative, mixture, or preparation of the

(a) mature stalks, except the resin extracted from the mature stalks;

(b) Fiber;

(c) Oil;

(d) cake; or

(v) The sterilized seed of the plant that is incapable of germination

Ark. Code Ann. § 5-64-101(17) (effective 2007 until 2019). In all candor to the Court, the United States notes that in *United States v. Watkins, Jr.*, 4:18-CR-00426-BSM, the district court held that

the prior state convictions for possession with intent to deliver marijuana in that case did not qualify under the Armed Career Criminal Act, citing *Perez*.

Even still, the United States takes the position that *Perez* was wrongly decided because it conflicts with Supreme Court precedent, namely *McNeil v. United States*, 563 U.S. 816 (2011). In *McNeil*, "the Supreme Court held that, when evaluating whether a prior state offense is a 'serious drug offense' because it carries a maximum sentence of ten or more years for the purpose of 18 U.S.C. § 924(e)(2)(A)(ii), we must look to the state's law at the time of the defendant's prior conviction." *United States v. Jackson*, No. 21-13963, 2022 WL 4959314 (11th Cir. Sept. 8, 2022) (vacating panel opinion in *United States v. Jackson*, 36 F.4th 1294 (11th Cir. 2022), and ordering supplemental briefing).

The Eighth Circuit has previously upheld a district court's ACCA determination in a case where the predicate offenses included Arkansas convictions for sale or delivery of marijuana in 1987 and possession of methamphetamine with the purpose to deliver in 2013. *United States v. Thomas*, 811 F. App'x 390, 391 (8th Cir. 2020) (per curiam) (unpublished). The Eighth Circuit opinion did not specify the controlled substance offenses, but the district court docket and PSR clearly set out his prior convictions. EDAR Case No. 4:18CR00173-KGB, ECF No. 64, p. 4) (noting prior convictions including for sale or delivery of marijuana and possession of methamphetamine with the purpose to deliver) (citing Transcript of Sentencing Hearing, Doc. 50, at pp. 3-4; PSR at pp. 6-7, 9). The sentencing transcript and PSR were part of the appellate record in *Thomas*. Fed. R. App. P. 10(a) (describing what documents comprise the record on appeal). Although the specific ACCA predicate challenged in *Thomas* was his prior robbery conviction, the fighting issue was his ACCA status, which the Eighth Circuit affirmed. *Id*. Additionally, in *United States v. Myers*, 928 F.3d 763, 765 (8th Cir. 2019), the Eighth Circuit upheld the ACCA

26

determination where one predicate was an Arkansas possession with the intent to deliver marijuana conviction from 2002. (Appellant's Brief, 2017 WL 4239208).

**IV.    Rhoden's terroristic threatening conviction counts as a violent felony.**

The analysis to determine whether a prior conviction qualifies as a "violent felony" is also a categorical approach under which the court "look[s] only to the fact of conviction and the statutory definition of the prior offense." *Taylor v. United States*, 495 U.S. 575, 602 (1990). "When a statute criminalizes both qualifying and non-qualifying conduct, courts apply a modified categorical approach and may consider the charging document, plea agreement, plea-colloquy transcript, or 'some comparable judicial record of this information' to determine under which portion of the statute the conviction arose." *Shepard*, 544 U.S. at 26.  Under either approach, the court must determine whether the defendant's conviction necessarily qualifies as an ACCA predicate. *See United States v. Bynum*, 669 F.3d 880, 885 (8th Cir. 2012).

"A person commits the offense of terroristic threatening in the first degree if with the purpose of terrorizing another person, the person threatens to cause death or serious physical injury or substantial property damage to another person. Ark. Code Ann. § 5-13-310(a)(1)(A). The Eighth Circuit has analyzed Section 301(a)(1)(A) and held that the offense qualifies as an ACCA predicate when the offense based on a threat to a person rather than property. *United States v. Myers*, 928 F.3d 763, 766 (8th Cir. 2019). Rhoden's terroristic threatening offense counts as an ACCA predicate because he was convicted of threatening a person. Here, Rhoden's plea colloquy shows that his conviction arose from the threat to a person as discussed in paragraph 34 of the PSR. *Rough Draft of Plea Hearing Transcript*, Exh. 4, at 4:14-24.  This threat conviction counts as an ACCA predicate.

IV.    **If the Court determines that the ACCA does not apply, it should still determine that Rhoden had at least 2 prior convictions for controlled substance offenses or crimes of violence as those terms are used in Section 2K2.1 of the Guidelines.**

The ACCA and the Guidelines involve very different analyses. A determination that an offense does not count for ACCA purposes is not dispositive on the question of whether the offense enhances the defendant's base offense level under Section 2K2.1. Here, even if the Court determines that the ACCA does not apply, Rhoden's prior drug convictions constitute controlled substances offenses under the Guidelines.

The relevant test for Section 2K2.1 purposes is found in the Guidelines definitions and not the ACCA. The Guidelines define a controlled substance offense as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the . . . distribution . . . or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." *See* U.S.S.G. § 2K2.1, application note 1 (explaining that the term "'controlled substance offense' has the meaning given that term in Section 4B1.2(b)).

In *Perez*, the Court determined that the defendant's cocaine conviction did not count for ACCA purposes. 46 F.4th at 701. However, the Court determined that such convictions qualified as controlled substance offenses for Guidelines purposes. *Id*. at 702-03. In reaching its decision, the Court determined that the term "controlled substance" in U.S.S.G. § 4B1.2(b) is not limited to definitions in the Controlled Substances Act. *Id*. at 702. Instead, "the plain meaning of the Guidelines generally includes 'state-law offenses related to controlled or counterfeit substances punished by imprisonment for a term exceeding one year.'" *Id*. (quoting *United States v. Ruth*, 966 F.3d 642, 654 (7th Cir. 2020)). Also, "whether a prior state conviction is a controlled substance offense for Guidelines purposes is based on the law at the time of conviction, without reference to current state law." *Id*. at 703.

28

If this Court determines that Rhoden is not subject to the ACCA, it should determine that he has at least two prior felony convictions of a controlled substance offense, namely his cocaine and marijuana convictions. Accordingly, if the defendant is not an Armed Career Criminal, the Court should determine that he has a base offense level of 26 under Section 2K2.1(a).

JONATHAN D. ROSS
United States Attorney

By: CAMERON C. McCREE (2007148)
Assistant U.S. Attorney
P.O. Box 1229
Little Rock, Arkansas 72203
(501) 340-2624
Cameron.McCree@usdoj.gov